HENRY M. KEMP, APPELLANT, V. MELVIN A. KEMP ET AL., APPELLEES.

FILED DECEMBER 5, 1908. No. 15,251.

Deeds: CANCELATION: EVIDENCE. Evidence examined and set out in the opinion *held* ample to sustain the findings and judgment of the district court.

APPEAL from the district court for Colfax county: CONRAD HOLLENBECK, JUDGE. *Affirmed.*

*Berge, Morning & Ledwith,* for appellant.

*A. M. Post, contra.*

FAWCETT, C.

This action was brought in the district court for Colfax county to obtain the cancelation of a deed executed by plaintiff and his former wife to the defendant Melvin A. Kemp; to require defendants to reconvey to plaintiff the real estate described in said deed; to permit the return by plaintiff to defendant Melvin of certain notes and a bond which had been executed by said defendant and delivered to plaintiff; and to quiet the title of said real estate in plaintiff, on the ground that said defendant, who is the son of plaintiff, had obtained said deed from plaintiff through undue influence exercised over plaintiff at a time when plaintiff's wife, defendant's mother, was dangerously ill, and plaintiff, by reason thereof, was not competent to deal at arm's length with said defendant, and alleges that there was an oral agreement giving him the right to demand a reconveyance of the property in case he at any time became dissatisfied.

In a separate answer, defendant Melvin admits the relationship of the parties and the subsequent remarriage of his father; denies all allegations of fraud or undue influence; and alleges that the contract entered into between himself and his father and mother was not only voluntary on the part of his parents, but was upon their earnest solicitation; that a prior contract entered into between himself and his father on October 1, 1896, of a somewhat similar character to the one in controversy was written out by the father; that its terms were all complied with by defendant, and that the subsequent contract of January 26, 1898, set out in plaintiff's petition, was also voluntary on the part of plaintiff, and, in fact, entered into at the solicitation of the plaintiff; that in arranging the details of said later contract each of the parties was represented by competent counsel; that the papers were prepared and executed by the parties in the office of plaintiff's attorney; denies all fraud and undue influence in the execution of said later contract; alleges that defendant has duly performed all the conditions of said later contract, and that both plaintiff and defendant, ever since the execution of said contract, have acquiesced in and acted in accordance with the terms and conditions thereof; that no oral agreement ever existed at the time of the execution of either of said contracts for a reconveyance of the property to plaintiff; that, if any such oral agreement had been entered into, the same would be void under the provisions of sections 3 and 5, ch. 32, Comp. St. 1895; alleges that by reason of the relation of landlord and tenant existing between the parties, particularly described in the petition and answer, plaintiff is now estopped to dispute defendant's title to said real estate or to assert title thereto adverse to defendant; and denies all allegations in plaintiff's petition not admitted by the answer. The defendant, Mary Kemp, wife of Melvin, adopts all of the several allegations in the answer of her husband, and makes the same her answer. The reply was a general denial. The court found generally in favor of

defendants and entered judgment dismissing plaintiff's action. A motion for new trial was filed and overruled. Plaintiff appeals. The assignment of errors is as follows: "(1) The court erred in entering judgment in favor of said defendants and against plaintiff. (2) The court erred in deciding the issues joined in said action against said plaintiff and dismissing the plaintiff's petition. (3) The judgment and findings of the court are contrary to law. (4) The judgment and findings of the court are contrary to the evidence. (5) Under the law and the evidence, the judgment should have been in favor of the plaintiff as prayed in the petition. (6) Errors of law occurring at the trial duly excepted to by said plaintiff." Under the well-settled practice in this court, none of the above assignments of error can be considered except the fourth—"The judgment and findings of the court are contrary to the evidence."

The facts as disclosed by the record are substantially as follows: Plaintiff's children, with the exception of defendant, had all married and started in life for themselves. Defendant was 22 years of age, and engaged to be married. He told his parents that it was his intention to go farther west and establish a home for himself. As to this point there is a conflict in the evidence. Plaintiff says that defendant commenced importuning the father and mother to convey the farm to him, and that he would support them. Plaintiff says he objected, for the reason that he did not think it would be a wise thing to do, but that the mother, who was quite infirm and in a nervous condition, could not bear the thought of the son leaving, and that she importuned plaintiff to accede to the son's demands; that his reason for acceding to the son's demands was that he wanted to pacify his wife, and, as far as possible, prolong her life. The testimony of the son is that the proposition to deed the farm to him came from his father, and did not meet with his approval; that the matter was discussed between them for a couple of weeks, the father and mother both wanting him to take a deed to

the farm, and bring his prospective wife there, and take charge of everything, and that he finally agreed to submit the matter to his affianced. Defendant and his wife both testify that, when he submitted the proposition to her, she objected, stating that she would prefer to have a home of their own; but, after discussing the matter on several occasions, she finally yielded, and the agreement was entered into. A contract was drawn up, by the father himself, which the son signed. This contract provided the terms upon which the son was to take the farm, and the support that he was to give the old people. He was to pay an outstanding note against the old gentleman of $80, was to care for the old folks, and give them a home on the place. The old lady was to have a barn fowl for her use whenever she desired it, and, in addition, the son was to pay the old folks $70 a year for their clothing. In accordance with this contract, the father and mother executed a straight warranty deed to the son, and the son gave back a $4,000 mortgage to act as security for the old people.

The mother is dead. The father claims that his son agreed orally that, if the arrangement did not prove satisfactory to the old people, they could have the deed back whenever they wanted it. This the son emphatically denies. After living together and eating at the same table for a number of months, the old folks became dissatisfied, and retired to two rooms of the house in which they lived and did their own cooking. The son paid the $80 note, and paid the first year's instalment of $70. Before the second year rolled around, the father became very much dissatisfied, and, as he says, demanded a deed from the son. The son denies this, and testifies that what the father wanted was for the son and his wife to move off the place, and give the old folks a lease upon the property, running to them, or the survivor of them, for life, so that they might have the use of the old home as before. The father and son each employed counsel, and they and their respective attorneys met in the office of the father's at-

torney, in Schuyler, where the matters were talked over and adjusted, the result of which was that the father released the $4,000 mortgage which the son had given him; the son gave the father a lease running to his father and mother, or the survivor of them, for life, and also gave notes to the father, aggregating $750, in favor of his brother and two sisters, being $250 to each, and executed a mortgage in favor of his brother and sisters to secure those notes. The son also gave the father his individual bond for $3,000 in which he bound himself not to convey the land to any one during the lifetime of the parents or either of them, and also executed to the father a $3,000 mortgage to secure the bond. Again, nothing was said in any of the papers about any right on the part of the old gentleman to recede from that arrangment and demand a deed. The father insists, however, that again there was an oral agreement that he might call for a deed if he was dissatisfied, which the son emphatically denies; and both attorneys testify that no such talk was had in their presence at the time of the adjustment of the differences between the father and son. The defendant and his wife moved off the premises in accordance with this last agreement, and the plaintiff has been in the possession, use and occupancy of the lands ever since, a period of about eight years. Shortly after his wife's death, and about six years prior to the commencement of this suit, the plaintiff remarried, and we think it is clear from the allegation of his petition that the purpose of this suit is not to gain anything for his other children, as he argued, but that the real purpose is explained by the sixth paragraph of his petition, which reads: "Plaintiff further states that shortly after the execution of said lease and notes the said wife of this plaintiff, Angelina Kemp, died of her before-mentioned ailments, said death taking place on the 14th day of February, 1900, and that thereafter this plaintiff remarried (plaintiff's testimony on the stand would indicate that he remarried the next month. He may possibly be mistaken by a year, but that is the only

construction that can be placed upon his evidence), and is now living with his said wife upon said real estate; that plaintiff is now 83 years of age, and that his present wife is the only person that is now taking care of and assisting him in his home, and that plaintiff is advised that it is quite probable that his present wife would have no legal right to remain upon said premises under the terms of said lease, and that the said defendants are threatening to drive her from said premises upon the death of this plaintiff, and this plaintiff is now dissatisfied with said last-mentioned arrangement and desires to entirely revoke the same, including the execution of the said deed of conveyance here procured from this said plaintiff by reason of the situation in which he was then placed, the sickness of his wife aforesaid, and the undue influence. of his son, and plaintiff now brings into court for cancelation and to be returned to the said defendants the said three promissory notes above mentioned and said bond."

Nowhere in his petition does he allege, as a reason for bringing this action, a desire to get the property in shape where his other children may obtain a larger patrimony than the $250 each, represented by defendant's notes. When plaintiff's present wife married him, his deed to the defendant and defendant's life lease to him and to his wife Angelina, or the survivor of them, for their natural lives, was on record so that plaintiff's present wife was well advised by the records that her marriage with plaintiff would not give her any interest, inchoate or otherwise, in the land then occupied by plaintiff. It seems to us, therefore, that when we consider the testimony of the son and his wife, and of the two lawyers who represented the respective parties at the time of the adjustment of their differences in 1900, and plaintiff's long acquiescence in the contract as made, the judgment of the district court was clearly right in dismissing plaintiff's suit.

We recommend that the judgment of the district court be affirmed.

CALKINS and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

ÁFFIRMED.